**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CAROL J. KENNEDY,**

    **Plaintiff,**

v.                                                                                          Case No.  8:04-cv-2062-T-TBM

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                         /

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[1] For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-eight years of age at the time of her administrative hearing. She stands 5', ½" tall and weighed 147 pounds. Plaintiff has one year of college education. Her past relevant work was as a receptionist, cashier, sales clerk, and assistant manager of a restaurant. Plaintiff applied for disability benefits alleging disability as of March 3, 2002, by reason of fibromyalgia, heart problems, neck and back problems, headaches, hip pain, high

---

[1] Also before the court is Plaintiff's Motion for Remand for Further Administrative Proceedings to Consider New Material Evidence (Doc. 16) and the Commissioner's response in opposition. (Doc. 20).

cholesterol, depression, anxiety, and fatigue.  The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  In essence, Plaintiff claimed that she could no longer work at any job because of her inability to sit or stand for very long and her inability to concentrate.  Plaintiff underwent back surgery in August 1999.  She testified that she was doing great for a while, but it hurts every once in a while.  Plaintiff testified that she experiences chest pain all the time, every day, because of her heart condition.  She takes Ascriptin daily for the pain.  She takes Synthroid for her thyroid condition, though she is asymptomatic.  Plaintiff said that she has suffered from anxiety for four or five years.  She becomes aggravated, cries a lot, and becomes mad at simple things.  She takes Celexa and Xanax, which cause her no side effects.  Despite this medication, she still suffers from depression and cries and wonders what she is doing here.  The medication does not help her anxiety except to make her a little less nervous.  Plaintiff also suffers from pain in her hips, legs, and arm.  According to Plaintiff, she has arthritis and fibromyalgia in the hips and down the legs, which make it difficult for her to move around, get out of bed, or walk around.  Plaintiff also has severe headaches and experiences blackouts.  Her headaches occur daily.  The blackout spells occur a couple of times a day to once a week and last for a few seconds to a few minutes, and Plaintiff has no warning of them.  Afterward, she feels very tired for a few hours.  Plaintiff also complained that she has problems with forgetfulness.

Plaintiff estimated that she can stand for about twenty or thirty minutes before she must sit down. She can sit in a chair for about twenty or thirty minutes, but she squirms. She is unable to bend and touch her toes. She can bend and touch her knees, but with difficulty.

As to her past work experience, Plaintiff testified that she was a salesperson in the men's department and shoe department at Montgomery Ward, a bookkeeper and cashier for Scotty's hardware store, a cashier for Staples, a clerk in the pharmacy department for Eckerd, and a receptionist for a doctor. As a receptionist, her duties were to check patients in, prepare their charts, collect payments, take patients to the examination room, take phone messages, and call pharmacies for prescriptions. Plaintiff also worked as a receptionist for a few months at Arthur Murray dance studio, and she worked as an assistant manager for about ten months at Steak Escape, a restaurant in the mall. In that position, her duties were to make bank deposits, write out schedules, hire and fire employees, made food order, and manage payroll. Plaintiff has not worked since leaving the doctor's office.

Plaintiff testified that she lives with her husband, and her nineteen-year-old daughter. On a typical day, Plaintiff dusts around the house, does the dishes, makes the bed, talks with her husband on the computer, watches television, walks around, naps, and does exercises. Plaintiff does some of the cooking, but her husband does most of it. She and her husband both do the grocery shopping. Plaintiff testified that the vacuum cleaner is too heavy to push. She is able to sweep the kitchen floor, but her daughter must hold the dustpan for her because bending is difficult. She is able to lift and carry eight to ten pounds, but sometimes it is difficult to hold a gallon of milk. She testified that her doctor wanted her to receive rehabilitation therapy, but she could not undergo therapy because of her blackout spells. She

walks around her house for exercise.  Plaintiff noes not drive or go anywhere by herself.  See Plaintiff's testimony (R. 483-92).

The ALJ also took testimony from Joyce Courtright, a vocational expert (hereinafter "VE").  The VE testified upon an assumption of a 47 or 48-year-old individual with a high school education who could lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; sit, stand, and walk six to eight hours in an eight-hour day; never climb a ladder but can occasionally climb stairs, balance, stoop, crouch, kneel, and crawl; have no exposure to dangerous moving machinery or unprotected heights; and have no exposure to concentrated heat, cold, dust, fumes, gases, or any other type of air pollutants.  Upon this hypothetical, the VE opined that such person could perform Plaintiff's past work as a men's clothing salesperson, cashier/checker, food manager, and receptionist.  Upon an assumption that such person could lift, carry, push, and pull ten pounds occasionally and five pounds frequently; sit for six hours and stand and walk for two hours in an eight-hour day; not climb a ladder but occasionally climb stairs; occasionally balance and stoop but not crouch, kneel, or crawl; and have no exposure to dangerous moving machinery or unprotected heights or concentrations of heat, cold, dust, fumes, gases, and other pollutants, the VE opined such person could still perform Plaintiff's past job of receptionist.  Upon the added limitation that secondary to anxiety and blackout spells, such person is likely to require unscheduled breaks of a frequency of two or three times a day and is likely to be absent from work as much as three to four times a month, the VE opined that no jobs would be available to the Plaintiff.  See VE's testimony (R. 492-97).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary. Plaintiff's date last insured for disability benefits was December 31, 2003.

By his decision of April 26, 2004, the ALJ determined that while Plaintiff has severe impairments related to fibromyalgia; coronary artery disease status post PTCA, stent placement, and bypass surgery; and a history of lumbar laminectomy and discectomy, she nonetheless had the residual functional capacity to lift and carry up to five pounds frequently and ten pounds occasionally; walk/stand for up to two hours and sit for up to six hours in an eight-hour day; occasionally climb stairs but never ladders, ropes, or scaffolds; occasionally balance and stoop but never kneel, crouch, or crawl; and must avoid exposure to moving machinery, unprotected heights, concentrated heat/cold, and concentrated dust, fumes, gases, and other air pollutants. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as a receptionist. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 17-18). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental

impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred in not ordering a consultative examination to determine Claimant's work capabilities, instead relying upon two physicians' RFC assessments completed 18 months and 11 months prior to the hearing date; and formulating her own RFC based upon the record alone without any assessment of RFC by a physician for the period after 2/17/2003;

(2) The ALJ erred in her assessment that Claimant was capable of performing her past relevant work; and

(3) The ALJ erred in her analysis of Claimant's credibility and her finding of "not credible" is not based upon substantial evidence.

By her first claim, Plaintiff urges that because the determination of a claimant's residual functional capacity ("hereinafter RFC") is a medical assessment, the ALJ in this instance was precluded from making such assessment without obtaining a consultative

evaluation.[2] By this argument, Plaintiff urges that the ALJ played both judge and physician by interpreting the raw medical data to determine her RFC. She urges the case should be remanded for further development of the record and to obtain a consultative evaluation to assess her RFC. (Doc. 15 at 19-20). In response, the Commissioner notes that, contrary to the Plaintiff's contention, the assessment of a claimant's RFC *is* the responsibility of the ALJ. (Doc. 19 at 6-10).

The Commissioner is correct that, at the administrative hearing level, the ALJ is responsible for assessing the claimant's RFC. See 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c); see also SSR 96-5p, 1996 WL 374183 at * 4-5 (S.S.A). In performing this assessment, the regulations and applicable case law do not require that the ALJ obtain a consultative evaluation in every instance. Indeed, under the applicable standard, the ALJ may order a consultative examination where such is warranted; however, the ALJ is not required to do so unless the record establishes that such examination is necessary to enable her to render an informed decision. See Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999); Ford v. Sec'y of Health & Human Svcs., 659 F.2d 66, 69 (5th Cir. Unit B 1981); see also 20 C.F.R.§§ 404.1517, 404.1519(a).

Here, as noted by the ALJ, the record reflects that the only doctors providing RFC assessments were state agency reviewing doctors, both of whom assessed the Plaintiff capable

---

[2]As Plaintiff frames the issue, the ALJ improperly relied on outdated RFC assessments by two nonexamining doctors. However, such is not the case, and Plaintiff acknowledges in her argument that the ALJ concluded that she could not adopt these doctors' functional capacity assessments given that they were made on review of less than the full medical evidence. See (R. 16).

of performing light exertional work. By the ALJ's assessment, Plaintiff was not capable of light exertional work and could only perform a reduced range of sedentary exertional work. The decision reflects that in reaching this assessment, the ALJ considered the entirety of the medical record and concluded that Plaintiff's coronary artery disease further reduced Plaintiff's functional capacity to the sedentary exertional level. Her evaluation of the medical record was bolstered by Plaintiff's testimony about how she spent her days and the conclusion that the level and nature of such activity was not inconsistent with sedentary work. My own review of the decision in light of a close review of the medical evidence and Plaintiff's testimony does not reveal any medical findings or opinions by the ALJ which are not appropriately drawn from the medical record or which otherwise reveal that the ALJ assumed the role of doctor in this case. Apart from an opinion as to the Plaintiff's functional capacity, it is difficult to imagine what other evidence of significance would have derived from a consultative evaluation and Plaintiff does not suggest any on this appeal.[3] My research reveals no controlling case law to support Plaintiff's blanket assertion that an ALJ may not make the connection between diagnoses and RFC without the assistance of a consultative examiner. While the circumstances in a given case may require the ALJ to obtain a consultative evaluation to assure an informed decision, it is not clearly demonstrated that this is such a case. Here, a fair reading of the entirety of the medical record supports a conclusion that Plaintiff had the functional capacity to do a reduced range of sedentary work.

---

[3]The record before the ALJ was extensive concerning Plaintiff's heart condition and the assessments of various treating doctors.

By her second claim, Plaintiff complains that the ALJ erred in concluding that she could perform her past work as a receptionist because the evidence demonstrated she was unable to perform such work for a full eight-hour workday, five days a week. In support, Plaintiff urges that she was hospitalized at least fourteen times in the two-year period preceding her date last insured for a total of forty-three days, and she points to the VE's testimony that there were no sedentary, unskilled jobs that would permit her to be absent from work 3 to 4 days a month. By Plaintiff's argument, the ALJ should have addressed such absenteeism and factored it into the conclusion that she could still perform her former work as a receptionist. Because the ALJ did not do so, the Plaintiff urges the ALJ's conclusion that Plaintiff could work as a receptionist is contradicted by the VE's testimony and a remand is necessary to explain the inconsistencies.

Insofar as Plaintiff argues that the ALJ did not consider her absenteeism, the ALJ's inquiry of the VE clearly suggests otherwise. Moreover, the ALJ fully considered the medical records related to her treatment for complaints of cardiac pain, and thus it would be inappropriate to conclude that these periods of hospitalization were ignored as Plaintiff contends. In any event, the hospitalization records (dated after Plaintiff's alleged onset date) reveal not even two days a month absenteeism on average, and there are no records documenting any cardiac-related hospitalizations in 2004.[4] To the extent that Plaintiff argues that the case must be remanded to clarify inconsistencies between the ALJ's conclusion and

---

[4] Although Plaintiff alleges a hospitalization for cardiac surgery in February 2004, the record itself documents the surgical removal of an implantable loop recorder that had been implanted under the skin (not in the heart), and it apparently did not require overnight hospitalization or cause complications.

10

the VE's testimony, the claim is without merit. As the transcript clearly reflects, the VE's testimony was given on the assumption that Plaintiff would miss 3 to 4 days each month or need unscheduled breaks 2-3 times daily. Ultimately, this restriction was implicitly rejected by the ALJ, and if such conclusion was warranted on the basis of the medical record, a remand would serve no useful purpose. For the reasons set forth below, I conclude that the ALJ was not required to credit the Plaintiff with such a disabling limitation.

By her third claim, Plaintiff urges that the ALJ's credibility determination is not based upon substantial evidence. More particularly, Plaintiff complains that the ALJ erred in stating that Plaintiff had suffered no complications after cardiac treatment, citing the need for other procedures in 2003 and 2004. Plaintiff also claims that the ALJ erred in concluding that she was not restricted in physical activity by her physicians, noting that in a couple of instances she was released or discharged with instructions to maintain activity "as tolerated." Plaintiff further urges that the ALJ's conclusion that her chest pain was not related to ischemia or coronary artery disease is also erroneous as reflected in various medical findings.[5] (Doc. 15 at 23-25).

---

[5]Finally, she complains that the ALJ's conclusion that the record did not document blackouts of the frequency alleged or the etiology of such is contradicted by new evidence from a January 2004 neurological examination and CAT scan of the brain which revealed evidence of diminution of the ventricular system. These records are submitted with a motion for remand (Doc 16), and the Plaintiff urges this new and material evidence may help explain the etiology of her syncope.

Initially, I find the decision reflects the ALJ's recognition and application of the standard applicable to the consideration of subjective complaints.[6] See (R. 15). Further, the decision reflects that the ALJ fairly recognized Plaintiff's subjective complaints of chronic back pain; daily headaches; pain in her hips, legs, and arms due to arthritis and fibromyalgia; daily chest pain; frequent blackouts; and depression and anxiety, as well as functional limitations in lifting, sitting and standing, bending, memory and concentration. Id. at 14. While the decision reflects that the ALJ credited Plaintiff with medical conditions which reasonably could be expected to produce such symptoms, she discounted Plaintiff's complaints to the extent that Plaintiff claimed she could do no work at all. (R. 15). In support of this conclusion, the ALJ generally cited the objective medical evidence and the weight of the medical and non-medical evidence. Id. More particularly, the ALJ stated,

> The claimant has a history of back surgery and she was diagnosed with fibromyalgia. However, examinations were negative for musculoskeletal or neurological findings, with only some tenderness in the spine noted; MRI studies showed only some scar tissue at L3-4 and no neural compression; and the claimant was prescribed only Naprosyn for control of symptoms. The record does not document significant complaints related to back pain or fibromyalgia after September 2001, and the claimant testified that her back

---

[6]In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

>hurt only once in a while.  Since September 2001, the claimant has been followed primarily for her cardiac condition.  The claimant had continuing complaints of chest pain and did require treatment in the form of angioplasty, stenting, re-stenting, and bypass surgery.  However, there were no complications of treatment; her medications were adjusted as necessary and apparently effective; and she was not restricted in activity by her physicians, but rather advised to continue exercising.  There was thought to be a psychological component to the claimant's chest pain symptoms, likely related to family stresses, with most symptoms not related to ischemia or coronary artery disease.  The record does not document blackouts of the frequency alleged by the claimant.  The etiology of the claimant's few documented episodes of syncope was not clearly determined; electrophysiology studies were normal and arrhythmia was essentially ruled out.  Again, the claimant's activities were not restricted by her physicians due to this condition.  The record does not reflect that the claimant had any serious long-term, continuing problems due to any other ailments.  The claimant was treated occasionally for upper respiratory infection and had an episode of laryngitis and hoarseness, but x-rays showed no acute changes and laryngeal testing was negative; there is no documentation of residual limitations or restrictions related to these conditions.  The record does not document that the claimant complained to her treating physicians of frequent headaches or any significant long-term side effects of medications.  The claimant alleged that she experienced daily pain and occasional blackouts.  Yet, she also indicated that she was able to do some cooking, household cleaning, shopping, use the computer, and walk for exercise.

(R. 15-16).  Plaintiff urges that certain of these conclusions are not supported by the record.

However, when the decision is read in full (and in context), the ALJ has adequately stated

reasons to conclude that Plaintiff's symptoms were not as severe as alleged.

First, I find upon a fair reading of the ALJ's decision that her finding that the

Plaintiff experienced no complications from treatment, when considered in context, is

supported by substantial evidence.  As the record reflects, Plaintiff reported to hospitals

complaining of chest pain on a number of occasions in 2002 and 2003.  On those occasions

when she was admitted, the record supports that she did respond to treatment and was

generally released after a short stay.  This is not to say, nor can the ALJ's decision be read to

say, that her condition was cured or that she did not again report to a hospital complaining of chest pain. She did and this was fairly assessed by the ALJ. Thus, while Plaintiff is correct that her bypass surgery in January 2003 was followed by an admission in June 2003 after an apparent incident of syncope, this is no where demonstrated to arise from a complication with the bypass surgery which is otherwise indicated to have been successful. Further, Plaintiff does not adequately explain why a discharge note recommending exercise "as tolerated" is inconsistent with a finding that Plaintiff's activities were not restricted and that she was advised to continue exercising.[7] A close reading of the medical records reveals no restrictions placed on the Plaintiff which would contradict the ALJ's conclusion that Plaintiff could do the work of a receptionist.

Plaintiff also complains that the ALJ erred in concluding that most of her symptoms were unrelated to ischemia or coronary artery disease. As set forth above, the ALJ's full conclusion in this regards was that the medical records suggested a psychological component to her chest pain symptoms, likely related to family stress, with most symptoms not related to ischemia or her artery disease. (R. 15). When considered in light of the entire medical record, this is a fair conclusion by the ALJ. While testing revealed cardiac artery disease and a number of procedures therefor, there was little evidence of ischemia. See, e.g., (R. 152, 161-62, 174, 182, 194, 197, 207, 209, 210, 218, 221, 236, 254, 273, 387). At least one

---

[7]Plaintiff's records reveal a number of different recommendations/ instructions including reducing risk factors, low fat diet, dieting, losing weight, no smoking, avoiding stress and taking medication. Plaintiff testified the doctors wanted her to go to rehab but she wasn't accepted because of blackouts. In any event, she testified that she exercised by walking around the island around her house.

treating doctor opined that Plaintiff's pain was not ischemic "most of the time." (R.194). On another occasion, the doctor recommended that perhaps Plaintiff seek a second opinion "since she keeps coming to the hospital multiple times and has pain frequently with no electrocardiogram changes and being everything else is negative." (R. 237). Another examining doctor opined that Plaintiff's symptoms were "way out of proportion to catheterization findings." (R. 221). A consulting psychologist diagnosed Plaintiff with general anxiety disorder, anxious depression and "high probability of psychological factors aggravating cardiac symptoms that do exist." (R. 244). At least two physicians concluded Plaintiff's pain complaints were "atypical." (R. 182, 249). Another cardiologist opined that given angiographic findings, he suspected Plaintiff's "chest pain and arm pain is noncardiac in etiology" and that "[t]here is a large component of anxiety." (R. 386). This conclusion by the ALJ is supported by substantial evidence.

Finally, to the extent Plaintiff complains on this appeal that the ALJ erred in concluding that the record did not document the frequency of blackouts she alleged nor revealed their etiology, she is wrong. A review of the records before the ALJ, did not document that Plaintiff suffered blackouts as frequently as she claimed and electrophysiology studies were essentially normal without evidence of arrhythmia. See (R. 452-57, 464, 471-72).

In conclusion, under the applicable standard, the ALJ may discount subjective testimony by stating adequate and explicit reasons for doing so. I conclude that he has done so. Further, when the opinions of various treating or consulting doctors are considered, there

15

is more than sufficient support for the conclusion that Plaintiff's limitations would not include the need for frequent (disabling) absenteeism from work by reason of her condition.

IV.

Plaintiff also has filed a motion for remand on the basis of alleged new and material evidence. (Doc. 16). The motion is accompanied by medical records for the period from December 17, 2003, through April 30, 2004. Plaintiff argues that these records offer further evidence of her pain symptoms and that she cannot perform work on a regular and continuous basis. She also contends the reports from Dr. Giannakopoulos and a CAT scan support her history of blackouts and headaches. In response, the Commissioner urges that a remand is not warranted because the new records are not material to the time period considered by the ALJ and Plaintiff has failed to establish good cause for not submitting the records at the administrative level. (Doc. 20).

In this circuit, a remand for consideration of new evidence is appropriate where the Plaintiff demonstrates that: "(1) there is new, non-cumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001) (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986) and citing Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998)).

Upon my review, three of the four records submitted are not new and Plaintiff has not demonstrated good cause as to why the records were not submitted timely to the ALJ. As

for the fourth, it could have been submitted to the Appeals Council prior to its decision. Contrary to Plaintiff's account, the ALJ's decision in this case was rendered April 26, 2004, and the Appeals Council's denial of the request for review was entered July 15, 2004. The initial record from Dr. Giannakopoulos is dated December 17, 2003. Dr. Kenneth Yamamura's report is dated in February 25, 2004. The script signed by Dr. Sichelman for a "power wheelchair" is dated April 30, 2004. No good cause is shown why any of these records were not timely made a part of the administrative record in this case, and Dr. Giannakopoulos's first report is cumulative. In any event, I cannot conclude that any of the records are material such that there is a reasonable possibility that they would change the administrative result. Here, Plaintiff's date last insured for disability benefits was December 31, 2003. Thus, she was obliged to establish her disability on or before that date. Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1981). Given this circumstance, I cannot find that either the report on the successful removal of the implanted loop recorder by Dr. Yamamura in February 2004 or the script signed by Dr. Sichelman for a "power wheelchair" on April 30, 2004, for "chronic back pain," without any further explanation, are material to the period of time adjudicated by the ALJ. Only Dr. Giannakopoulos's January 7, 2004, note is arguably material in that it reflects on Plaintiff's complaints of headaches and reports that the CAT scan indicated "a diminution of the ventricular system." However, no other explanation is offered except that Plaintiff was otherwise neurologically intact and that a trial of Diamox might benefit her. Even if there were good cause to excuse the late submission of this report, it is simply insufficient to permit a conclusion that it reasonably likely would have changed the administrative results.

V.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Plaintiff's Motion to Remand for Further Administrative Proceedings to Consider New Material Evidence (Doc. 16) is DENIED. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 27th day of September 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record